Ederlinda Villa
10530 Hope Mills Dr.
Las Vegas, NV 89135
Telephone: 702-493-3059

Attorney for Debtor *Pro Se*

RECEIVED & FILED

MAR 18  3 24 PM '10

U.S. BA.
MARY A SCHOTT, CLERK

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

**IN RE: EDERLINDA VILLA**

EDERLINDA VILLA

    Plaintiff Petitioner

v.

ONE WEST BANK, FSB fka INDYMAC
BANK, FSB; QUALITY LOAN SERVICE
CORP.; DOES I-X; and ROE
CORPORATIONS XI-XX, inclusive

    Defendants

Case No.: 10-14307-MKN
Chapter 13

)
)
)
)
)
)
)
)
)
)
)
)
)

**Adversarial Proceedings No. _____**

## COMPLAINT

This is an adversary proceeding pursuant to Rule 7001, subsections (1) and (2) of the Federal

Rules of Bankruptcy Procedure to recover real property and determine the validity, priority or

extent of Plaintiff's and Defendants' respective interests in the real property located at 10530

Hopemills Drive, Las Vegas, NV 89135  with a legal description of:

       LOT FORTY-THREE (43) IN BLOCK ONE (1), OF

       WISTEREA HILLS IN SUMMERLIN AS SHOWN BY MAP

       THEREOF ON FILE IN BOOK 96 OF PLATS, PAGE 93 IN

THE OFFICE OF THE COUNTY RECORDER OF CLARK,

COUNTY.

A.P.N. 164-13-615-043

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this lawsuit because it involves a core matter  pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §§ 157(a), (b)(2)(A), (b)(2)(B), (b)(2)(G).

2. This adversary proceeding relates to *In re Ederlinda Villa*, a Chapter 13 case pending before the United States Bankruptcy Court for the District of Nevada docketed as case number 10-14307-MKN.

3. Defendant IndyMac/One West submitted itself to the jurisdiction of this Court when it filed a motion for relief of stay claim in a previous bankruptcy case filed on or about June 2, 2009 with case number 08-19361

4. Venue for this matter is proper pursuant to 28 U.S.C. § 1409.

5. This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

## PARTIES

6. Plaintiff is the Petitioner in the *In re Ederlinda Villa*, a Chapter 13 case pending before the United States Bankruptcy Court for the District of Nevada, docketed as case number  10-14307-MKN.

7. At all times mentioned herein, Defendant INDYMAC BANCORP, INC. dba  INDYMAC BANK, FSB (hereinafter, "INDYMAC"), was a financial institution operating under the laws of the State of Nevada who was doing business in the City of Las Vegas, Nevada.

8. At all times mentioned herein, Defendant ONEWEST BANK, FSB (hereafter, "ONEWEST") is and was a Delaware corporation and financial institution located at 1209

- 2 -
ADVERSARY PROCEEDINGS BANKRUPTCY CASE 10-14307-MKN

Orange Street, Wilmington, Delaware, operating under the laws of the State of Nevada who was doing business in the City of Las Vegas, County of Clark, Nevada.

9. At all times mentioned herein, ONEWEST was and remains the successor in interest to Defendant INDYMAC, a financial institution located at 6900 Beatrice Drive, Kalamazoo, Michigan, operating under the laws of the State of Nevada who was doing business in the City of Las Vegas, County of Clark, Nevada.

10. At all times mentioned herein, Defendant Quality Loan Service Corporation (hereinafter Quality Loan), is and was a California corporation located at 2141 5th Avenue, San Diego, California and doing business in the City of Las Vegas, County of Clark, Nevada.

11. Plaintiff is not aware of the true names and capacities of the defendants sued as DOES 1 through 250, inclusive, and therefore sues such defendants by such fictitious names. Each of these fictitiously named defendants is responsible in some manner for the activities alleged in this Complaint. Plaintiff will amend this Complaint to add the true names of the fictitiously named defendants once they are discovered.

12. The defendants identified in paragraphs 1 through 11, *supra*, shall hereinafter be referred to collectively as "Defendants."

13. Whenever reference is made in this Complaint to any act of any Defendant that allegation shall mean that each defendant acted individually and jointly with the other Defendants.

14. Any allegation about any acts of any corporate or other business entity means that the corporation or business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the scope of their authority and/or employment.

15. At all relevant times each Defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Some or all of the Defendants acted as the agent of the other Defendants and all of the Defendants acted within the scope of their agency if serving as another's agent.

16. At all relevant times each Defendant knew or should have known that the other Defendants were engaged in or planning to engage in the violations of law alleged in this Complaint. Each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and encouraged, facilitated, or assisted in the commission of the unlawful acts.

17. At all relevant times the Defendants have engaged in a conspiracy, common enterprise and/or common course of conduct, the purpose of which was to engage in the violations of law alleged in this Complaint. This conspiracy, common enterprise and/or course of conduct continues to the present.

18. The violations of law alleged in this Complaint occurred in Clark County and elsewhere throughout Nevada and the United States.

## **BACKGROUND FACTS**

19. On or about April 15, 2004, Plaintiffs applied for a loan using the Subject Property hereinabove described as collateral in a contract of mortgage with INDYMAC as lender and beneficiary and the Plaintiffs as the borrowers.

20. On or about April 15, 2004, Plaintiffs entered into an agreement; a Deed of Trust in the sum of $448,000.00 based on a 30-year variable interest rate loan starting at 2.750% APR with a

maximum cap of 10.375%, through INDYMAC, as lender, in this transaction payable until May 1, 2034. This loan has attachments which the Defendants' referred to as a "Fixed/Adjustable Rate Interest only Libor Rider" and "Planned Unit Development Rider". The loan was based upon Plaintiffs stated income rather than verified income, and their ability to pay the loan.

21.   The initial payments were $2, 006.67 for the mortgage.

22.   The escrow was closed, and Plaintiffs made the mortgage payment and continued to do so, until the combination of Plaintiffs lack of income and the confusing terms of their loan caused Plaintiffs to default on the loan at or about one and one-half years after the loan were originated by Defendants.

23.   Plaintiffs alleges upon information and belief that Defendants are not the holder of the original notes identified in the Deed of Trust.

24.   Plaintiffs further alleges that Defendants do not have the right to cause the foreclosure and non-judicial sale of the Subject Property owned by Plaintiffs, which non–judicial foreclosure is set for unknown date.

25.   Plaintiffs alleges upon information and belief that Defendants are not the holder of the original notes identified in the Deed of Trust. Plaintiffs further alleges that Defendants do not have the right to cause the foreclosure and non-judicial sale of the Subject Property owned by Plaintiffs, which non-judicial foreclosure is set for unknown date.

26.   This action also concerns Defendants' unlawful, fraudulent and unfair business acts or practices, Defendants engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of consumers who would accept this type of loan in order to maximize Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to lose their homes through foreclosure.

## CLAIMS FOR RELIEF

27. The following Causes of Action are asserted against the Defendant herein without prejudice to any rights Plaintiff may have, or which this Court may grant to Plaintiff, to assert additional causes of action or allegations based on facts disclosed in documents or other information made available to the Plaintiff in the future or developed as a result of discovery or otherwise.

## FIRST CLAIM OF RELIEF

### Defendants Lacks Legal Standing to Conduct and Enforce a Non-Judicial Foreclosure

27.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraph 1 to 26 of the Complaint as though herein fully set forth.

28.   Plaintiffs submits the opinion and Order of Honorable Judge Christopher A. Boyko in the matter of In Re Foreclosure Cases, United States District Court, Northern District of Ohio (Eastern Division) ruled in favor of 14-homeowners for the lender's (Deutsch Bank) failure to prove ownership of the property under foreclosure.

29.   A party seeking to foreclose bears the burden of demonstrating standing and must plead its components with specifity, and must demonstrate that it was the holder and owner of the note and Deed of Trust as of the date of foreclosure. Except as otherwise provided in subsection 3 of this section and subsection 4 of NRS 104.3106, a "holder in due course" means the holder of an instrument if: (1) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and (2) The holder took the instrument: (a) for value; (b) in

good faith; (c) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series; (d) Without notice that the instrument contains an unauthorized signature or has been altered; (e) Without notice of any claim to the instrument described in NRS 104.3306; and (f) Without notice that any party has a defense or claim in recoupment described in subsection 1 of NRS 104.3305.

30. Plaintiffs maintains on information and belief that there have been numerous improprieties in the transfer and appointment of trustees in the handling of their loan, and that the alleged foreclosing trustee, Defendants QUALITY are not properly appointed as foreclosing trustee nor acting in conformity with law.

31. Plaintiffs upon information and belief none of the Defendants INDYMAC and QUALITY are holders in possession of the instrument who has the right of the holder and none of the Defendants are entitled to enforce the instrument. Since there is no right to enforce the instrument due to the Defendants are not the holders in due course, the Notice of Default and Notice of Sale provisions of Nevada likewise have never been complied with, and there is no subsequent incidental rights whatsoever to enforce any Deed of Trust and conduct a non-judicial foreclosure.

32. Plaintiffs further allege that QUALITY as the alleged foreclosing trustee is not legally the recorded substituted trustee under this Deed of Trust. Plaintiffs never received any notices with regard to the assignments of the Deed of Trust and the substitution of Trustees. Later on, Plaintiffs found that INDYMAC recorded a substitution which is dated February 23, 2009. On or about February 11, 2009 QUALITY acted in behalf of INDYMAC by issuing the Notice of Default without the recording of the substitution of trustee. Plaintiff maintains that there are

improprieties in the foreclosure of their property for the reason that the substitution was only recorded after the Notice of Default has been recorded and sent.

33.  As a direct and proximate result of the conduct described herein, Plaintiffs have suffered mental anguish, conscious pain and suffering and mental anguish, conscious pain and suffering and mental distress from their economic misfortune and must be awarded damages.

34.  As a direct and proximate result of the above describes conduct of Defendants, Plaintiffs have sustain in the future, losses, injuries and additional damages of emotional, physical, and economic nature, and must be awarded appropriate damages.

35.  As a direct and proximate result of the above described conduct of the Defendants, Plaintiffs have suffer in the future personal, mental, physical and economic damages in an amount as the court will determined.

## SECOND CLAIM OF RELIEF

### Fraudulent Misrepresentation against Defendants

36.  Plaintiff realleges and incorporates by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein

37.  A misrepresentation is fraudulent if the maker (a) knows or believes that the matter is not as he represents it to be; (b) does not have confidence in the accuracy of his representations that she/he states or implies, or (c) knows that he does not have a basis for her representation that he states or implies. In order that a fraudulent misrepresentation exists the following elements should exist: (a) misrepresentation; (b) knowledge of falsity; (c) justifiable reliance; (d) resulting to damage; (e) induce reliance.

38.  Plaintiffs alleges that there are improprieties in the transfer of the Deed of Trust information's from Defendant INDYMAC also demonstrates falsity of the purported

assignments of the Deed of Trust from Defendant INDYMAC to Defendant QUALITY.

Plaintiffs maintain that this is sham acts without informing and notifying the Plaintiffs.

39.  Unfortunately the alleged trustee in this foreclosure, Defendant QUALITY are likewise engaged in attempting to perpetrate a fraud upon Plaintiffs and upon the citizens of Nevada by purporting to assume the role of foreclosing trustee, in violations of Nevada loan statutes.

40.  Plaintiffs further alleges that Defendants, and each of them, had a duty and obligation to represent accurately, truthfully, and completely disclose all the information that Plaintiffs relied upon in performing their investigation, consideration, and evaluation of whether to obtain additional mortgage financing, alternate mortgage financing and/or selection of refinancing for the subject property. The Defendants breached their duty and obligation to provide accurate, truthful and complete information by failing to provide the necessary information to Plaintiffs in a manner that they would understand, considering the latter's limited understanding, education, and training in these matters, and they failed to provide the information necessary for Plaintiffs to make a complete accurate and well-thought decision on these financial issues, all of which caused them damage. Plaintiffs relied upon the misrepresentation of the Defendant informing their decision regarding the loan transactions at issue. Under NRS 205.372 which states that a person who, with the intent to defraud a participant in a mortgage lending transaction; (a) Knowingly makes a false statement or misrepresentation  concerning  a material  a material fact deliberately conceals of fails to disclose a material fact. (b) knowingly uses or facilities the use of a false statement or misrepresentation made by another person concerning a material fact or deliberately uses or facilitates the use of another person's concealment or failure to disclose a material fact. (c) Receives any proceeds or any other money in connection with a mortgage lending transaction that the person knows resulted from a violation of par. (a) or (b). (d)

Conspires with another person to violate any of the provisions of par. (a) (b) or (c); or (e) files or causes to be filed with a County Recorder any document that the person knows to include a misstatement, misrepresentation or omission concerning a material fact.

41. Moreover, Defendants, and each of them, had a duty and obligation to represent accurately, truthfully, and completely all the information that Plaintiffs relied upon in performing their investigation, consideration, and evaluation of whether to obtain additional mortgage financing, alternate mortgage financing, and/or selection of refinancing for the subject property. The Defendants breached their duty and obligation to provide accurate, truthful and complete information by failing to provide the information to Plaintiffs in a manner that they would understand with their limited understanding, education, and training in these matters, and they failed to provide all the information necessary for Plaintiffs to make a complete accurate and well-thought decision on these financial issues, all of which caused them damage. Plaintiffs relied upon the negligent misrepresentations of the Defendants informing their decision regarding the loan transactions.

42. Plaintiffs alleges that they have oral and/or written agreements with all the Defendants and/or through the Promissory Note and Deed of Trust, all the Defendants were bound by the agreements, oral or written made by and between Defendants to Plaintiffs. Each agreement between Defendants and Plaintiffs required that the Defendants deal fairly and in good faith with Plaintiffs and not to seek to take undue advantage of Plaintiffs in their weakened bargaining position and with their lesser knowledge, skill, education and ability regarding the loan transactions.

43.  As a direct and proximate result of the conduct described herein, Plaintiffs have suffered mental anguish, conscious pain and suffering and mental anguish, conscious pain and suffering and mental distress from their economic misfortune and must be awarded damages.

44.  As a direct and proximate result of the above describes conduct of Defendants, Plaintiffs have sustain in the future, losses, injuries and additional damages of emotional, physical, and economic nature, and must be awarded appropriate damages.

45.  As a direct and proximate result of the above described conduct of the Defendants, Plaintiffs have suffer in the future personal, mental, physical and economic damages in an amount as the court will determine.

### THIRD CLAIM OF RELIEF

#### Fraudulent Concealment against All Defendants

46.  Plaintiff realleges and incorporates by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein

47.  Plaintiffs allege that during the loan application process, Defendants failed to inform Plaintiffs that based solely on their stated income, their credit rating, and the ratio of their assets and liabilities; could not and would not qualify for the subject loan. Plaintiffs' income was never truly verified so much so that in this context, it made the latter believe that their income was commensurate to the loan they applied for. This indicates that the Defendants, and each of them, were satisfied enough to draw the conclusion that the Plaintiffs could adequately repay the loan they applied for that they neglected or deliberately disregarded this otherwise important requisite. A determination of whether Plaintiffs would be able to make the payments as specified in the loan was never truly made where the required loan credit investigation apparently was not conducted for their benefit.

48.   Plaintiffs allege that they were not informed adequately about the full terms and/or possible consequences of their loan agreement. Plaintiffs were not informed of the following including but not limited to: the rate of interest, how interest rate would be calculated, and what the payment schedule should be, the risks and disadvantages of the loan, the prepay penalties, the maximum amount the loan payment could arise to, or the inflated valuation of the Real Property.

49.   Plaintiffs allege that from and after April 15, 2004 and thereafter, Defendants, and each of them inclusive of INDYMAC, had a duty to disclose to Plaintiffs that they could not qualify for the subject loan, but chose not to disclose this information to benefit from the payments Plaintiffs would make, and did make, on the loan, and would eventually foreclose on the Subject Property, when Plaintiffs would, and has as of present, default on the loan.

50.   Plaintiffs allege that at all times relevant, Defendants, inclusive of INDYMAC, failed to disclose and or concealed material facts by making partial representations of some material facts such as representing to Plaintiffs that their stated income would be sufficient to qualify them for the loan, when this Defendants had exclusive knowledge of material facts, namely that Plaintiffs could not have qualified for a loan in the amount of $448,000.00, with monthly payments that would, and did, outstrip Plaintiffs financial ability to generate revenue.

51.   Plaintiffs allege that had they known the true facts, they would have considered other options, and would not have obligated themselves to a $448,000.00 which over time would have cost them well in excess of the amount loaned.

52.   Plaintiffs maintain that the Promissory Note and the Deed of Trust dated April 15, 2004 carries the loan number 3535352. The Plaintiffs received a Notice of Default with a loan number 1004290092. Defendants defrauded them by concealing the status of the true loan

entered into under the Deed of Trust. Plaintiffs are liable for a loan 1004290092 which they did not benefit.

53.  Plaintiffs allege that as a direct and proximate result of Defendants failure to disclose and omission of the above-mentioned material facts, as alleged herein, Plaintiffs have suffered compensatory and equitable damages, in a sum according to proof at trial.

54.  Plaintiffs allege that the wrongful conduct of Defendants, as alleged herein, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, and malicious and in conscious disregard for the well being of Plaintiffs, accordingly, Plaintiffs seek damages against Defendants in an amount to deter Defendants form similar conduct in the future.

## FOURTH CLAIM OF RELIEF

### Usury and Fraud against All Defendants

55.  Plaintiff realleges and incorporates by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

56.  Plaintiffs are informed and believes that Defendants disguised the transaction to create the appearance of the lender being a properly chartered and registered financial institution authorized to do business and to enter into the subject transaction when in fact the real party in interest was not disclosed to Plaintiffs, as Plaintiffs are informed and believes and thereon alleges that, at all times herein mentioned, each of the Defendants and was at all times acting within the purpose and scope of such agency and employment, and neither were the various fees, rebates, refunds, kickbacks, profits and gains of the various parties who participated in this unlawful scheme.

57.  As such this fraudulent scheme (which was I actuality a plan to trick the Plaintiffs into signing what would become a negotiable security used to sell unregulated securities under

fraudulent and changed terms from the original loan) was in fact a sham to use Plaintiffs interest in the Real Property to collect in excess of the legal rate.

58. The transaction involved a loan of money pursuant to a written agreement, and as such, subject to the rate limitation set forth under State and Federal law the formula rate referenced in those laws was exceeded by a factor in excess of ten contrary to the applicable law.

59. That the defendants failed to disclose to the Plaintiffs that the loan obtain has an interest rate higher than that rate reflected in preliminary disclosures and do not fall within the tolerance as required by NRS 99.050. That although there are no usury laws, per se, in Nevada and no statutory restrictions on late charges, prepayment penalties or points, interests especially compounded ones must be specifically agreed to in writing NRS 99.050. Besides, the state of Nevada adopted a statute called "predatory lending statute" which requires additional disclosures and restricts certain charges and fees on certain loans. NRS 598D, basically, applies to any loan which is under section 152 of the Home Ownership and Equity Protection Act of the Federal Truth in Lending requirements. Failure to give the appropriate disclosures can have severe penalties including the elimination of all interest provided in the loan applying all payments made by the borrower event those not made to the lenders like appraisal fees and other cost of escrow to the principal of the loan and reconveyance of the Deed of Trust.

60. Although Nevada is one of only of few states in the United States that completely lacks a usury limits when it comes to personal loan or to any other type of financing in Nevada, it does not mean that there are not some restrictions when it comes to loan and lending as well as interest rates that are permissible in Nevada. Nevada has a legal interest rates on personal loan established at 12%.

61. Courts in Nevada have been equally (comparatively) liberal when it comes to issues involving lending practices and interests rates. Acting on equitable principles, courts have been known to refashion personal loan agreements that had higher interest rates when the occasion or situation arises. In other words, some courts in Nevada have refashioned a loan agreement by lowering the interest rate and then enforcing the loan agreement with the revised interest rate inserted therein.

62. Under applicable law, the interest charged on this usurious mortgage prevents any collection or enforcement or principal or interest of the note, void any security interest there on, and entities the Plaintiffs to recovery of all money or value paid to Defendants, plus treble damages, interest and attorney's fees.

63. Under applicable law, Plaintiffs are also entitled and demand permanent injunction being entered against the Defendants (a) preventing them from taking any action or making any report in furtherance of collection on this alleged debt which was usurious, as aforesaid; (b) requiring the records custodian of the County in which the alleged mortgage and other instruments are recorded to remove same from the record; (c) allowing the filing of said order in the office of the Clerk of the property records where the Subject Property, "loan transaction" and any other documents relating to this transaction are located and (d) dissolving any lis pendens or notice of pendency relating to the Defendant purported claim.

## FIFTH CLAIM OF RELIEF

### Unconscionability against all Defendants

### CONSPIRACY TO DEFRAUD

### [Against Defendants IndyMac/One West and Residential Mortgage]

85. Plaintiff realleges and incorporates by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

86. All Defendants had a duty to provide Plaintiff with accurate, truthful and complete information regarding the subject loan transaction; as previously alleged, each and all Defendants acted as agents and representatives of each other.

87. In particular, Defendant Residential Mortgage was an agent and representative of Defendant Indy Mac regarding Plaintiff's loan to purchase the subject property, and at all times acted within the scope of that agency. Defendant One West, as purported successor in interest to Indy Mac and through Defendant Residential Mortgage as its authorized agent, fraudulently misled Plaintiff into believing that she was qualified for, and capable of performing under the terms of, that mortgage loan contract, and they fraudulently misled Plaintiff and concealed from her material information vis a vis material terms of the loan contract (see Plaintiff's third through fifth causes of action, previously incorporated herein by reference).

88. By committing the acts and/or failures to act, making the representations and engaging in the concealment set forth in all causes of action of this Complaint, all Defendants and each of them acted with a common design intentionally and for the express purpose of inducing Plaintiff to enter a profoundly disadvantageous mortgage loan contract designed to lead to an inevitable foreclosure.

89. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered economic and additional damages according to proof. Additionally, because Defendants and each of them acted with malice and oppression, Plaintiff is entitled to an award of punitive damages.

90. Further, Plaintiff is informed and has reason to believe that all Defendants acts and omissions, as set forth in all causes of action of this Complaint (previously incorporated herein by reference) were part of a interstate common design and pattern of practice intentionally and for the express purpose of illegally inflating Defendants' Nevada and national profits from mortgage loan and mortgage loan securities transactions.

91. When it entered into the mortgage loan contract with Plaintiff on June 5, 2008, Defendant IndyMac knew or had reason to know that it was on the brink of failure and would be out of business in approximately one month. Defendant Indy Mac failed and was taken over by the Federal Deposit Insurance Corporation on July 11, 2008. Defendant IndyMac also knew or should have known of the precise risks and dangers to homeowners associated with mortgage loan contracts of the nature it executed with Plaintiff, and had a duty to advise Plaintiff of said risks and dangers prior to execution of the contract.

92. Defendant IndyMac was a national bank that offered mortgage loans to homeowners. A large number of these loans were "option ARM" ("Adjustable Rate Mortgage") mortgages using stated income programs. These loans were offered by IndyMac directly, and also through Mortgage Brokers, who funded the loans and allowed IndyMac to buy them and reimburse the mortgage banker or broker.

93. The loans were sold to homeowners by Mortgage Brokers who desired the large rebates that Defendant IndyMac offered for the loans. The rebates were usually about three points. When the loans were sold to Wall Street, they were securitized through pooling and servicing agreements.

94. When an option ARM loan was sold as a Wall Street security, Defendant IndyMac realized from four to six points, and the three point rebate to a broker was paid from these proceeds. Consequently, Defendant IndyMac itself "earned" three points for each loan sold.

95. Even though IndyMac sold off most loans, they still held a large number of option ARMs and other loans in their portfolio. Plaintiff is informed and has reason to believe that Defendant OneWest now claims that it is not doing loan modifications because their pooling and servicing agreements do not allow for loan modifications. However, Plaintiff is informed and has reason to believe this condition, if it exists, was created by design by Defendants IndyMac and One West to promote foreclosures and thereby increase profits. Plaintiff is informed and has reason to believe that, in the pooling and servicing agreement covering Plaintiff's mortgage loan, the sponsor for the trust is Defendant IndyMac, the Seller for the trust is Defendant IndyMac, the depositor for the trust is Defendant IndyMac, the issuing entity for the trust is Defendant IndyMac and the master servicer for the trust is, again, Defendant IndyMac. In other words, Defendant IndyMac was the only party involved in the pooling and servicing agreement.

96. Defendant OneWest was created on Mar 19, 2009 from the assets of Defendant IndyMac; it was created solely for the purpose of absorbing Defendant IndyMac. Defendant Quality Loan is an agent and representative of Defendant OneWest with respect to the foreclosure actions at issue in this litigation.

97. Plaintiff is informed and has reason to believe that, in violation of Nevada and federal law, as part of this business formation and transfer of assets, Defendants IndyMac, One West and Quality Loan, with a common purpose and design in the transfer mortgage loan assets – including but not limited to Plaintiff's mortgage loan, established loan modification and foreclosure policies, processes and procedures with the express purpose of discouraging loan modifications, workouts and forbearances and increasing more-profitable foreclosures.

98. Defendants IndyMac and OneWest executed a contract covering the sale and/or transfer of IndyMac's assets. Plaintiff is informed and has reason to believe that this contract establishes

that Defendant OneWest would purchase all first mortgages such as Plaintiff's at seventy percent of the current balance, and that, in the event of foreclosure, the Federal Deposit Insurance Corporation would cover from eight to ninety five percent of losses, using the original loan amount and not the current balance.

99. Consequently, Plaintiff is informed and has reason to believe, in designing and implementing their contract for the transfer and administration of mortgage loan assets (securitized and non-securitized), Defendants IndyMac and OneWest acted with a common purpose and design to unfairly inflate their profits by creating internal policies and procedures that illegally prevent and/or interfere with Plaintiff's and other homeowners' ability to meaningfully participate in home loan modification programs provided through Nevada and federal statutes

100. Plaintiff is informed and has reason to believe that Defendant OneWest as a matter of pattern and practice receives profits in additional income above the actual purchase price of a home loan in foreclosure such as Plaintiff's amount after it receives the FDIC reimbursement. Consequently, neither Defendant OneWest Bank nor its agent and/or have any meaningful intention of conducting home loan modifications or complying with state and federal statutes that promote home loan modifications for individuals such as Plaintiff. Any loan modification means that Defendants OneWest and Quality Loan would lose this additional profit.

101. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered economic and additional damages according to proof. Additionally, because Defendants and each of them acted with malice and oppression, Plaintiff is entitled to an award of punitive damages.

## SIXTH CLAIM OF RELIEF

### Unjust Enrichment and Civil Conspiracy against All Defendants

102. Plaintiff realleges and incorporates by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

103. Defendants implied contract with the Plaintiffs to ensure that Plaintiffs understood all fees, which would be paid to the Defendants to obtain credit on Plaintiffs behalf and to not charge any fees, which was not related to the settlement of the loan and without full disclosure to Plaintiffs.

104. Defendants cannot, in good conscience and equity, retain the benefits from their actions of charging a higher interest rate, fees, rebates, kickbacks, profits (including but not limited to from sale of mortgages and notes using Plaintiffs identity, credit score and reputation without consent, right, justification or excuse as part of an illegal enterprise scheme) and gains and fee unrelated to the settlement services provided at closing.

105. Defendants have been unjustly enriched at the expense of the Plaintiffs, and maintenance of the enrichment would be contrary to the rules and principles of equity.

106. In connection with the application for and consummation of the mortgage loan the subject of this action, Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiffs.

107. Defendants agreed between and among themselves to engage in the conspiracy to defraud for the common purpose of accruing economic gains for themselves at the expense of and detriment to the Plaintiffs.

108. The actions of the Defendants were committed intentionally, willfully, wantonly, and with reckless disregard for the rights of the Plaintiffs.

109. Plaintiffs thus demands restitution from the Defendants in the form of actual damages, exemplary damages, and attorney's fees.

110. As a direct and proximate result of the actions of the Defendants in combination resulting in fraud and breaches of duties, Plaintiffs have suffered damages.

111. Plaintiffs thus demand an award of actual, compensatory and punitive damages.

## SEVENTH CLAIM OF RELIEF

### QUIET TITLE

112. Plaintiffs reallege and incorporate by reference the allegations of paragraphs 1 to 71 of the Complaint, as though herein fully set forth.

113. Plaintiffs are the owners of the Subject Property per the Deed of Trust executed by Plaintiffs.

114. The basis of Plaintiffs interest in title is a Deed of Trust from Defendants, granting the Subject Property to Plaintiffs, and recorded in the Official Records of the County of Clark.

115. Plaintiffs are seeking to quiet title against the claims of Defendants as follows: Defendants are seeking to hold themselves out as the fee simple owners of the subject properties, when in fact they do not have possession of the original note signed in ink by the Plaintiffs and in fact Plaintiffs have an interest in such properties held by Defendants, when Defendants have no right, title, interest, or estate in the Subject Property, and Plaintiffs interest is adverse to Defendants' claims of ownership.

116. Plaintiffs seek to quiet title as of April 15, 2004.

117. Plaintiffs therefore seeks a judicial declaration that the title to the Subject Property is vested in Plaintiffs alone and that defendants INDYMAC lender, and foreclosing trustee QUALITY be declared to have no estate, right, title, or interest in the Subject Property and that

said defendants, and each of them, be forever enjoined from asserting any estate, right, title, or interest in the Subject Property, adverse to Plaintiffs herein.

## EIGHT CLAIM OF RELIEF

### DECLARATORY AND INJUNCTIVE RELIEF

#### [Against All Defendants]

118. Plaintiff realleges and incorporates by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

119. An actual controversy exists as to all legal and factual issues raised throughout this Complaint and incorporated by reference herein. As evidenced by their previously filed Demurrer to Plaintiff's First Amended Complaint, Defendants object to and disagree with all of Plaintiff's allegations, including but not limited to Plaintiff's claims that: a. none of these Defendants are parties to an express binding agreement with Plaintiff. Further, as set forth in the Complaint,

a. any purported "binding" agreement between Plaintiff and Defendant IndyMac is legally deficient, void and/or voidable ;

b. the purported non-judicial foreclosure on the subject property was not conducted in accord with controlling statutes and was based upon improperly assigned, void and/or voidable documents;

c. Defendants failed to provide Plaintiff with full disclosure of the material terms of her home loan, and fraudulently induced her to execute the loan contract;

d. Defendants sold a loan to Plaintiff for which she was not qualified based upon her actual income, credit history, and debt and asset ratio;;

e. Defendants filed their notice of default and commenced foreclosure against her without complying with the loan modification and foreclosure avoidance mandates of NRS 107.080 and AB 146.

120. Plaintiff desires a judicial determination of his rights and duties, and a declaration from this Court as to the validity of the original mortage loan agreements, the subsequent purported assignments of the deed of trust and/or mortgage note, and Defendants' non-judicial foreclosure on the subject property.

121. A judicial declaration is necessary and appropriate at this time under the circumstances so that all parties may ascertain their legal rights to the subject property.

122. Defendants' actions have undermined Plaintiff's rights to and enjoyment of the subject property and have interfered, and will continue to interfere with Plaintiff's right of possession as the owner of the subject property.

123. As demonstrated by the facts and legal authority set forth throughout this Complaint and incorporated by reference herein, Plaintiff has a strong likelihood of prevailing on the merits.

124. Plaintiff requests that this court grant a Preliminary Injunction and Temporary Restraining Order and issue injunctive relief to bar any further action to list the subject property for a non-judicial sale pursuant to foreclosure proceedings, to preclude Defendants from engaging in the wrongful conduct identified herein in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ederlinda Villa prays for judgment as follows:

1. For recission of the loan and cancellation of the deed of trust and note on the subject real property.

2. For an Order enjoining and/or restraining defendants from proceeding with any foreclosure, sale, transfer, unlawful detainer or any other action pertaining to the subject real property unless and until it can present proof that it is entitled enforce the underlying promissory note described in the deed of trust for the subject property;

3. For general damages;

4. For compensatory damages – in particular, due to the absence of any legally valid "binding express agreements" between Plaintiff and any Defendant, and all Defendants' failures to make any restitution to him, Plaintiff can sustain an equitable theory such as unjust enrichment to

recover the undeserved economic boon that inured to each Defendant from their receipt of his mortgage payments, associated fees and charges, etc. (See *Lauriedale Assocs. v. Wilson* (1992) 7 Cal.App.4th 1439, 1448.);

5. For special damages according to proof;

6. For exemplary and punitive damages according to proof;

7. For costs of suit herein incurred;

8. For an award to plaintiff for monetary damages against all Defendants jointly, severally, that Plaintiffs incurred due to the need to bring this action for injunctive relief according to proof;

9. For an award of statutory damages to plaintiffs for Unfair Debt Collection practices under Nevada statutes;

10. For attorneys fees as permitted by law;

11. For treble damages as permitted by law;

13. For prejudgment interests as permitted by law; and

14. For such other and further relief as the court may deem proper.

DATED: March 18, 2010

EDERLINDA VILLA
Attorney for Plaintiff/Petitioner
*Pro Se*

## PROOF OF SERVICE

### CCP. SECTIONS 1013a, 2015.5

I am a citizen of the United States and a resident of Clark County; I am over the age of eighteen years and not a party to the within action; On March __, 2010, I served a copy of the attached:

## ADVERSARIAL PROCEEDINGS

___XX___       by placing said copy in a sealed envelope with postage thereon fully prepaid, following ordinary business practices, said correspondence to be deposited with the United States Postal Service, that same day in the ordinary course of business, at Las Vegas, Nevada addressed as set forth below.

_____       by personally delivering a true copy thereof to the person(s) at the address(es) as set forth below.

_____       by sending a copy to Facsimile number     the person at the address(es) as set forth below.

_____       by placing said copy in a sealed envelope, in the area designated for overnight, express mail pick-up, addressed as set forth below.

ONEWEST BANK, FSB
1209 Orange Street,
Wilmington, Delaware,

ONEWEST (INDYMAC)
6900 Beatrice Drive,
Kalamazoo, Michigan 49003

QUALITY LOAN SERVICE CORP.
2141 5th Avenue,
San Diego, California 92101

     I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is true and correct.
Dated: March18, 2010



PROOF OF SERVICE