Ederlinda Villa
10530 Hope Mills Dr.
Las Vegas, NV  89135
Telephone 702-493-3059

Attorney for Debtor, *in Pro Se*

RECEIVED & FILED

APR  6   2 00 PM '10

U.S. B~ ...
MARY A. SCHOTT, CLERK

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

**IN RE: EDERLINDA VILLA**

**Case No: 10-14307-MKN**
**Chapter 13**

| | |
|---|---|
| EDERLINDA VILLA | ) |
| | ) **Adversarial Proceeding No. _____** |
| Plaintiff/Petitioner | ) |
| | ) |
| v. | ) |
| | ) |
| WELLS, FARGO N.A.  KH FINANCIAL, | ) |
| L.P.; WELLS FARGO HOME | ) |
| MORTGAGE, INC.; NATIONAL | ) |
| DEFAULT SERVICING | ) |
| CORPORATION.; and DOES I-X, | ) |
| inclusive | ) |
| | ) |
| Defendants | ) |

## COMPLAINT

1.  This is an adversary proceeding pursuant to Rule 7001, subsections (1) and (2) of the Federal Rules of Bankruptcy Procedure to recover real property and determine the validity, priority or extent of Plaintiff's and Defendants' respective interests in the real property located at 10723 Magnolia Tree, Las Vegas, Nevada 89135 with legal description as:

LOT 58 OF MAGNOLIA AT SUMMERLIN CENTRE UNIT 1 AS
SHOWN BY MAP THEREOF ON FILE IN BOOK 106 OF PLATS, PAGE
41, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK
COUNTY, NEVADA with A.P.N. 164-01-818-052

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this lawsuit because it involves a core matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. §§ 157(a), (b)(2)(A), (b)(2)(B), (b)(2)(G).

2. This adversary proceeding relates to *In re Ederlinda Villa*, a Chapter 13 case pending before the United States Bankruptcy Court for the District of Nevada, docketed as case number 10-14307-MKN.

3. Defendant WELLS submitted itself to the jurisdiction of this Court when it filed a motion for relief of stay claim against the above described property on or about September 2, 2009. (EXHIBIT "E")

4. Venue for this matter is proper pursuant to 28 U.S.C. § 1409.

5. This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

## PARTIES

6. Plaintiff is the Petitioner in the *In re Ederlinda Villa*, a Chapter 13 case pending before the United States Bankruptcy Court for the District of Nevada, docketed as case number 10-14307-MKN.

2. Defendant Wells Fargo, N.A. (hereinafter "WELLS"), at all times mentioned, doing business in the City of Las Vegas, County of Clark, Nevada with address 420 Montgomery Street San Francisco, CA 94163 and purported successor to Wells Fargo Home Mortgage.

3.  Defendant, KH FINANCIAL, L.P. (hereinafter "KH"), at all times herein mentioned, and whose address is 6 Sunset Way #102 Henderson, Nevada 89014, an Illinois corporation alleged to be the "Lender" in the Deed of Trust regarding Plaintiff's Real Property as described above and situated in Clark County Nevada. The State of Illinois does not have any registration for said entity in its database of Corporations that have filed its incorporation papers to be a duly recognized entity in the State of Illinois or elsewhere in the United States.

4.  Defendant, WELLS FARGO HOME MORTGAGE, INC. (hereinafter "WF HOME"), at all times herein mentioned, with an address 3601 Minnesota Drive, MAC X4701-022, Bloomington, MN 55435 was doing business in the County of Clark, State of Nevada and alleged to be the successor in interest of KH under the Deed of Trust and above named "Real Property."

5.  Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does I through X, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when they have been ascertained.

6.  Plaintiff is informed and believe and thereon allege that, at all times herein mentioned, each of the defendants sued herein in relation to the property they claim an interest in, was that the agent and employee of each of the remaining defendants thereof and at all times, was acting within the purpose and scope of such agency and employment.

12. Plaintiff is not aware of the true names and capacities of the defendants sued as DOES 1 through 250, inclusive, and therefore sues such defendants by such fictitious names. Each of these fictitiously named defendants is responsible in some manner for the activities alleged in this Complaint. Plaintiff will amend this Complaint to add the true names of the fictitiously named defendants once they are discovered.

13. The defendants identified in paragraphs 1 through 12, *supra*, shall hereinafter be referred to collectively as "Defendants."

14. Whenever reference is made in this Complaint to any act of any Defendant that allegation shall mean that each defendant acted individually and jointly with the other Defendants.

15. Any allegation about any acts of any corporate or other business entity means that the corporation or business did the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the scope of their authority and/or employment.

16. At all relevant times each Defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Some or all of the Defendants acted as the agent of the other Defendants and all of the Defendants acted within the scope of their agency if serving as another's agent.

17. At all relevant times each Defendant knew or should have known that the other Defendants were engaged in or planning to engage in the violations of law alleged in this Complaint. Each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and encouraged, facilitated, or assisted in the commission of the unlawful acts.

18. At all relevant times the Defendants have engaged in a conspiracy, common enterprise and/or common course of conduct, the purpose of which was to engage in the violations of law alleged in this Complaint. This conspiracy, common enterprise and/or course of conduct continues to the present.

19. The violations of law alleged in this Complaint occurred in Clark County and elsewhere throughout Nevada and the United States.

## BACKGROUND OF FACTS

20.     On or about September 16, 2003, Plaintiff entered into an agreement; a Deed of Trust (EXHIBIT "A") in the sum of $210,600.00 based on a 30-year variable interest rate loan starting at 4.875% APR with a maximum cap of 9.875%, through KH, as lender, in this transaction payable until October 1, 2033. This loan has attachments which the Defendants' referred to as an "Adjustable Rate Rider", "Planned Unit Development Rider". The loan was based upon Plaintiff stated income rather than verified income, and their ability to pay the loan.

21.     The initial payments were $1,114.51 for the mortgage.

22.     The escrow was closed, and Plaintiff made the mortgage payment on or about October 2003, and continued to do so, until the Plaintiff's found confusing terms of their loan on who were the real parties involved caused Plaintiff to default on the loan.

23.     Plaintiff alleges upon information and belief that Defendants are not the holder of the original notes identified in the Deed of Trust.

24.     Plaintiff further alleges that the Deed of Trust is void having been assigned and transferred on September 10, 2003 prior to the Trust being executed by the Plaintiff on September 16, 2003.

25.     Plaintiff further alleges that Defendants do not have the right to cause the foreclosure and non-judicial sale of the Subject Property owned by Plaintiff, which non–judicial foreclosure is set for unknown date.

26.     Plaintiff alleges upon information and belief that Defendant WELLS, Defendant WF HOME nor Defendant KH is the holder of the original note identified in the Deed of Trust. Plaintiff further alleges that Defendants do not have the right to cause the foreclosure and non-judicial sale of the Subject Property owned by Plaintiff, which non-judicial foreclosure is set for unknown date.

27.     This action also concerns Defendants' unlawful, fraudulent and unfair business acts or practices, Defendants engaged in a campaign of deceptive conduct and concealment aimed at maximizing the number of consumers who would accept this type of loan in order to maximize

Defendants' profits, even as Defendants knew their conduct would cause many of these consumers to lose their homes through foreclosure.

## FIRST CLAIM OF RELIEF

### Defendants Lacks Legal Standing to Conduct and Enforce a Non-Judicial Foreclosure

28.    Plaintiff reallege and incorporate by reference the allegations contained in paragraph 1 to 27 of the Complaint as though herein fully set forth.

29.    Plaintiff alleges that Defendant KH is not a legal entity in the State of Illinois as it claims to conduct any legal business.   The Deed of Trust clearly shows Defendant KH is an Illinois Corporation. Upon investigation of the State of Illinois Data Base for businesses registered and incorporated in the State of Illinois , KH does not exist as a Corporation or a Limited Partnership. (EXHIBIT "D")

30.    Plaintiff submits the opinion and Order of Honorable Judge Christopher A. Boyko in the matter of In Re Foreclosure Cases, United States District Court, Northern District of Ohio (Eastern Division) ruled in favor of 14-homeowners for the lender's (Deutsch Bank) failure to prove ownership of the property under foreclosure.

31.    A party seeking to foreclose bears the burden of demonstrating standing and must plead its components with specifity, and must demonstrate that it was the holder and owner of the note and Deed of Trust as of the date of foreclosure. Except as otherwise provided in subsection 3 of this section and subsection 4 of NRS 104.3106, a "holder in due course" means the holder of an instrument if: (1) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and (2) The holder took the instrument: (a) for value; (b) in good faith; (c) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series; (d) Without notice that the instrument contains an unauthorized signature or has been altered; (e) Without notice of any claim to the instrument

described in NRS 104.3306; and (f) Without notice that any party has a defense or claim in recoupment described in subsection 1 of NRS 104.3305.

32.     Plaintiff maintains on information and belief that there have been numerous improprieties in the transfer and appointment of trustees in the handling of their loan, and that the alleged foreclosing trustee, Defendants NATIONAL is not properly appointed as foreclosing trustee as purported by the Defendants on recorded documents at the Clark County Recorders Office, Clark County, Nevada, nor are the Defendants acting in conformity with law.

33.     Plaintiff upon information and belief none of the Defendants KH and WELLS and NATIONAL are holders in possession of the instrument who has the right of the holder and none of the Defendants are entitled to enforce the instrument. Since Neither is the Holder in due course, there is no right to enforce the instrument. Subsequently, the Notice of Default and Notice of Sale provisions of Nevada likewise have never been complied with, and there is no subsequent incidental rights whatsoever to enforce any Deed of Trust and conduct a non-judicial foreclosure.

34.     As a direct and proximate result of the conduct described herein, Plaintiff have suffered mental anguish, conscious pain and suffering and mental anguish, conscious pain and suffering and mental distress from their economic misfortune and must be awarded damages.

35.     As a direct and proximate result of the above describes conduct of Defendants, Plaintiff have sustain in the future, losses, injuries and additional damages of emotional, physical, and economic nature, and must be awarded appropriate damages.

36.     As a direct and proximate result of the above described conduct of the Defendants, Plaintiff have suffer in the future personal, mental, physical and economic damages in an amount as the court will determined.

## SECOND CLAIM OF RELIEF

### Fraudulent Misrepresentation against Defendants

37.     Plaintiff reallege and incorporate by reference the allegations contained in paragraph 1 to 35 of the Complaint as though herein fully set forth.

38.    A misrepresentation is fraudulent if the maker (a) knows or believes that the matter is not as he represents it to be; (b) does not have confidence in the accuracy of his representations that she/he states or implies, or (c) knows that he does not have a basis for her representation that he states or implies. In order that a fraudulent misrepresentation exists the following elements should exist: (a) misrepresentation; (b) knowledge of falsity; (c) justifiable reliance; (d) resulting to damage; (e) induce reliance.

39.    Plaintiff alleges that there are improprieties in the transfer of the Deed of Trust information from Defendant KH to Defendant WELLS. The Corporate Assignment was dated September 10, 2003 while the Deed of Trust was actually signed by the Plaintiff on September 16, 2003. This also demonstrates falsity of the purported assignments of the Deed of Trust from Defendant KH to Defendant WF HOME, and by the sequence of events, making the substitution of Trustee executed by Defendant WELLS to Defendant NATIONAL *invalid (emphasis added).* Plaintiff maintain that this is sham acts without informing and notifying the Plaintiff.

40.    Unfortunately the alleged trustee in this foreclosure, Defendant NATIONAL are likewise engaged in attempting to perpetrate a fraud upon Plaintiff and upon the citizens of Nevada by purporting to assume the role of foreclosing trustee, in violations of Nevada statutes.

41.    Plaintiff further alleges that Defendants, and each of them, had a duty and obligation to represent accurately, truthfully, and completely disclose all the information that Plaintiff relied upon in performing their investigation, consideration, and evaluation of whether to obtain additional mortgage financing, alternate mortgage financing and/or selection of refinancing for the subject property. The Defendants breached their duty and obligation to provide accurate, truthful and complete information by failing to provide the necessary information to Plaintiff in a manner that they would be clear to the Plaintiff and Defendants WF HOME and KH failed to provide the information necessary for Plaintiff to make a complete accurate and well-thought decision on these financial issues, all of which caused them damage. Plaintiff relied upon the misrepresentation of the Defendant informing their decision regarding the loan transactions at issue. Under NRS 205.372 which states that a person who, with the intent to defraud a participant in a mortgage lending transaction; (a) Knowingly makes a false

statement or misrepresentation concerning a material a material fact deliberately conceals of fails to disclose a material fact. (b) knowingly uses or facilities the use of a false statement or misrepresentation made by another person concerning a material fact or deliberately uses or facilitates the use of another person's concealment or failure to disclose a material fact. (c) Receives any proceeds or any other money in connection with a mortgage lending transaction that the person knows resulted from a violation of par. (a) or (b). (d) Conspires with another person to violate any of the provisions of par. (a) (b) or (c); or (e) files or causes to be filed with a County Recorder any document that the person knows to include a misstatement, misrepresentation or omission concerning a material fact.

42.      Plaintiff alleges that Defendant WF HOME and Defendant KH concealed the true nature of the transaction. Plaintiff was led to believe that Defendant KH was the true lender, hiding the fact that WF HOME was using Defendant as a Broker and nothing more. Moreover, Defendants, and each of them, had a duty and obligation to represent accurately, truthfully, and completely all the information that Plaintiff relied upon in performing their investigation, consideration, and evaluation of whether to obtain additional mortgage financing, alternate mortgage financing, for the subject property. The Defendants breached their duty and obligation to provide accurate, truthful and complete information by failing to provide the information to Plaintiff in a manner that they would be informed of the true nature of the transaction and they failed to provide all the information necessary for Plaintiff to make a complete accurate and well-thought decision on these financial issues, all of which caused them damage. Plaintiff relied upon the misrepresentations of the Defendants informing their decision regarding the loan transactions.

43.      Plaintiff alleges that they have oral and/or written agreements with all the Defendants and/or through the Promissory Note and Deed of Trust, all the Defendants were bound by the agreements, oral or written made by and between Defendants to Plaintiff. Each agreement between Defendants and Plaintiff required that the Defendants deal fairly and in good faith with Plaintiff and not to seek to take undue advantage of Plaintiff in their weakened bargaining position.

44.     As a direct and proximate result of the conduct described herein, Plaintiff have suffered mental anguish, conscious pain and suffering distress from their economic misfortune and must be awarded damages.

45.     As a direct and proximate result of the above describes conduct of Defendants, Plaintiff have sustain in the future, losses, injuries and additional damages of emotional, physical, and economic nature, and must be awarded appropriate damages.

46.     As a direct and proximate result of the above described conduct of the Defendants, Plaintiff have suffer in the future personal, mental, physical and economic damages in an amount as the court will determine.

### THIRD CLAIM OF RELIEF

#### Fraudulent Concealment against All Defendants

47.     Plaintiff reallege and incorporate by reference the allegations contained in paragraphs 1 to 45 of the Complaint as though herein fully set forth.

48.     Plaintiff allege that during the loan application process, Defendants failed to inform Plaintiff that based solely on their stated income, their credit rating, and the ratio of their assets and liabilities; could not and would not qualify for the subject loan. Plaintiff' income was never truly verified so much so that in this context, it made the latter believe that their income was commensurate to the loan they applied for. This indicates that the Defendants, and each of them, were satisfied enough to draw the conclusion that the Plaintiff could adequately repay the loan they applied for that they neglected or deliberately disregarded this otherwise important requisite. A determination of whether Plaintiff would be able to make the payments as specified in the loan was never truly made where the required loan credit investigation apparently was not conducted for their benefit.

49.     Plaintiff allege that they were not informed adequately about the full terms and/or possible consequences of their loan agreement. Plaintiff were not informed of the following including but not limited to: the rate of interest, how interest rate would be calculated, and what the payment schedule should be, the risks and disadvantages of the loan, the prepay penalties,

the maximum amount the loan payment could arise to, or the inflated valuation of the Real Property.

50.       Plaintiff allege that from and after September 16, 2003 and thereafter, Defendants, and each of them inclusive of Defendant KH, Defendant WF HOME and Defendant WELLS, had a duty to disclose to Plaintiff that they could not qualify for the subject loan, but chose not to disclose this information to benefit from the payments Plaintiff would make, and did make, on the loan, and would eventually foreclose on the Subject Property, when Plaintiff would, and has as of present, default on the loan.

51.       Plaintiff allege that at all times relevant, Defendants, inclusive of Defendant KH and Defendant WF HOME, failed to disclose and or concealed material facts by making partial representations of some material facts such as representing to Plaintiff that their stated income would be sufficient to qualify them for the loan, when this Defendants had exclusive knowledge of material facts, namely that Plaintiff could not have qualified for a loan in the amount of $210,600.00, with monthly payments that would, and did, outstrip Plaintiff financial ability to generate revenue.

52.       Plaintiff alleges that Defendant KH, having concealed the fact that Defendant WF HOME is the true lender, was declaring a Loan Origination Fee as shown on the HUD-1 Settlement Statement (EXHIBIT "B") but was truly a Mortgage Broker Fee rather than a Loan Origination Fee as the document indicated. This is not only fraudulent misrepresentation but also a violation of the Truth in Lending Act.

53.       Plaintiff allege that had they known the true facts, they would have considered other options, and would not have obligated themselves to a $210,600.00 which over time would have cost them well in excess of the amount loaned.

54.       Plaintiff alleges that Defendant KH concealed from the Plaintiff that Defendant WF HOME was the true lender and that Defendant KH was acting merely as a Mortgage Broker in the transaction. This is evidenced by the Corporate Assignment of the Deed of Trust (EXHIBIT "C") assigning said Deed of Trust (EXHIBIT "A") on September 10, 2010 to

Defendant WELLS 6 days before the Deed of Trust was actually executed, signed and dated and became effective on September 16, 2010 by the Plaintiff.

55.    Plaintiff allege that as a direct and proximate result of Defendants failure to disclose and omission of the above-mentioned material facts, as alleged herein, Plaintiff have suffered compensatory and equitable damages, in a sum according to proof at trial.

56.    Plaintiff allege that the wrongful conduct of Defendants, as alleged herein, was willful, oppressive, immoral, unethical, unscrupulous, substantially injurious, and malicious and in conscious disregard for the well being of Plaintiff, accordingly, Plaintiff seek damages against Defendants in an amount to deter Defendants form similar conduct in the future.

## FOURTH CLAIM OF RELIEF

### Unjust Enrichment and Civil Conspiracy against All Defendants

57.    Plaintiff reallege and incorporate by reference the allegations of paragraph 1 to 55 of the Complaint, as though herein fully set forth.

58.    Defendants implied contract with the Plaintiff to ensure that Plaintiff understood all fees, which would be paid to the Defendants to obtain credit on Plaintiff behalf and to not charge any fees, which was not related to the settlement of the loan and without full disclosure to Plaintiff.

59.    Defendants cannot, in good conscience and equity, retain the benefits from their actions of charging a higher interest rate, fees, rebates, kickbacks, profits (including but not limited to from sale of mortgages and notes using Plaintiff identity, credit score and reputation without consent, right, justification or excuse as part of an illegal enterprise scheme) and gains and fee unrelated to the settlement services provided at closing.

60.    Defendants have been unjustly enriched at the expense of the Plaintiff, and maintenance of the enrichment would be contrary to the rules and principles of equity.

61.    In connection with the application for and consummation of the mortgage loan the subject of this action, Defendants agreed, between and among themselves, to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful

1    means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the

2    Plaintiff.

3    62.      Defendants agreed between and among themselves to engage in the conspiracy to

4    defraud for the common purpose of accruing economic gains for themselves at the expense of

5    and detriment to the Plaintiff.

6    63.      The actions of the Defendants were committed intentionally, willfully, wantonly,

7    and with reckless disregard for the rights of the Plaintiff.

8    64.      Plaintiff thus demands restitution from the Defendants in the form of actual

9    damages, exemplary damages, and attorney's fees.

10    65.      As a direct and proximate result of the actions of the Defendants in combination

11    resulting in fraud and breaches of duties, Plaintiff have suffered damages.

12    66.      Plaintiff thus demand an award of actual, compensatory and punitive damages

## FIFTH CLAIM OF RELIEF

## QUIET TITLE

15    67.      Plaintiff reallege and incorporate by reference the allegations of paragraphs 1 to 65

16    of the Complaint, as though herein fully set forth.

17    68.      Plaintiff are the owners of the Subject Property per the Deed of Trust executed by

18    Plaintiff.

19    69.      The basis of Plaintiff interest in title is a Deed of Trust from Defendants, granting

20    the Subject Property to Plaintiff, and recorded in the Official Records of the County of Clark.

21    70.      Plaintiff are seeking to quiet title against the claims of Defendants as follows:

22    Defendants are seeking to hold themselves out as the fee simple owners of the subject

23    properties, when in fact they do not have possession of the original note signed in ink by the

24    Plaintiff and in fact Plaintiff have an interest in such properties held by Defendants, when

25    Defendants have no right, title, interest, or estate in the Subject Property, and Plaintiff interest is

26    adverse to Defendants' claims of ownership.

71.    Plaintiff alleges that an Assignment executed prior to the Actual Document being executed by the Plaintiff is void. Defendant KH cannot assign or take beneficial rights to a contract and or agreement that has not been executed by the Plaintiff.

72.    Plaintiff seek to quiet title as of September 16, 2003.

73.    Plaintiff therefore seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone and that defendants KH lender, successor in interest WELLS and foreclosing trustee NATIONAL be declared to have no estate, right, title, or interest in the Subject Property and that said defendants, and each of them, be forever enjoined from asserting any estate, right, title, or interest in the Subject Property, adverse to Plaintiff herein.

## SIXTH CLAIM OF RELIEF

### A. Defendants violated the provisions on Section 1635(a) under Truth In Lending Act (TILA)

73.    Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 to 72 of the Complaint as though herein fully set forth.

74.    Pursuant to 15 USC, 1635(a), creditors are required to "clearly and conspicuously" disclose to the borrower the borrower's rescission rights under TILA. Moreover, pursuant to the regulation adopted in Regulation Z for enforcing TILA, there are five essential elements of which Plaintiff must be notified with respect to the Plaintiff's right to rescind.  12 C.F.R. 226.23(b): (i) The retention or acquisition of a security interest in the Plaintiff's (consumer's) principal dwelling; (ii) The Plaintiff's (consumer's) right to rescind the transaction; (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditors place of business; (iv) The effects of rescission; and (v) The date the rescission period expires.

75.    Plaintiff alleges that she must be provided with an information or notice of her Right to Rescind in accordance with the TILA provision cited above.  Nevertheless, KH did not furnish the Plaintiff any information regarding the Plaintiff's right of rescission.  Plaintiff maintains that Defendant KH did not provide a full accurate disclosure of the borrower's right to rescind.

76.        Plaintiff further reiterates that at the time of closing of the loan transaction, Defendant KH failed to inform her of her right to rescind the agreement.

77.        Plaintiff alleges that due to the failure of Defendant KH to inform her of the right to rescind, she was not given sufficient time to reexamine the credit agreement and close disclosures, and to reconsider if she wants to place her home at risk as security for the credit. As a result, Plaintiff was positioned in a situation wherein her home can be possibly lost in the future.

78.        Plaintiff alleges that, in connection with the required Notice, she did not receive any copy, specifically two copies, as TILA requires, of the right to rescind, as well as the copy of the TILA material disclosure requirements.

79.        Plaintiff further maintains that due to the absence of the Notice of the Right to Rescind, she was not properly informed of the conditions surrounding such right like as to how and when the right is to be exercised.

80.        Plaintiff alleges that due to the failure of the lender to give the required rescission notice, she was already given extended three years, under TILA, to rescind the transaction.

81.        Plaintiff further alleges that the Notice of Rescission should have been provided by the True Lender Defendant WF HOME, who conspired with Defendant KH of its true identity as the Lender. Plaintiff further alleges that  Defendant KH was paid a Broker's Fee that was guised as the Loan Origination Fee as shown by the HUD-1 Statement (EXHIBIT "B"). This is in violation of TILA where all Fees are required to be shown and identified for what is its true intent.

**B. As to the disclosure requirements under TILA**

82.        Under the Truth In Lending Act, the required disclosure requirements regarding the nature of the loan transaction must be made in a clear and conspicuous language. Furthermore, in consonance with the Notice of the Right to Rescind, the lender must disclose the following: a) the retention or acquisition of security interest in the consumer's principal

dwelling; b) consumer's right to rescind; c) how to exercise such right; d) the effects of rescission; and, e) the date the rescission period expires.

83.            Plaintiff argues that due to the failure of Defendant KH to give the Notice of the Right to Rescind, the latter failed to disclose to the former the nature of the loan transactions and the conditions surrounding such.

84.            Plaintiff cited that Defendant KH failed to disclose the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, and the due dates or periods of payments scheduled to repay the indebtedness, as required under TILA. By such non-disclosure, the Plaintiff was put in a position wherein she was not given the opportunity to understand clearly the contract she entered into.

85.            As a result, Plaintiff was in an undue disadvantage to protect her interest and rights over the Subject Property which will possibly cause her an irreparable damage and injury.

## EIGTH CLAIM OF RELIEF

## QUIET TITLE

86.            Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 to 85 of the Complaint, as though herein fully set forth.

87.            Plaintiff is the owner of the Subject Property per the Deed of Trust executed by Plaintiff.

88.            The basis of Plaintiff interest in title is a Deed of Trust from Defendants, granting the Subject Property to Plaintiff, and recorded in the Official Records of the County of Clark.

89.            Plaintiff is seeking to quiet title against the claims of Defendants as follows: Defendants are seeking to hold themselves out as the fee simple owners of the subject properties, when in fact they do not have possession of the original note signed in ink by the Plaintiff and in fact Plaintiff have an interest in such properties held by Defendants, when

Defendants have no right, title, interest, or estate in the Subject Property, and Plaintiff interest is adverse to Defendants' claims of ownership.

90.        Plaintiff seek to quiet title as of September 16, 2003.

## NINTH CLAIM OF RELIEF

### Violation of the Real Estate Settlement Procedures Act (RESPA)

### against Defendant KH

91.        Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 to 90 of the Complaint as though herein fully set forth.

92.        Defendant KH, nor Defendant WF HOME did not offer any disclosures to the Plaintiff in any form. Plaintiff was told of the approval of the loan and was never given any disclosures as required by RESPA. Defendants did not comply with the disclosure requirements 24 CFR 3500.7, which is a Good Faith Estimate (GFE), was never provided. It is the responsibility of the funding lender that the GFE has been delivered. 24 CFR 3500.6 as required by RESPA was not provided by any of the Defendants. If the borrower uses a mortgage broker, the broker, must provide the booklet.

93.        Plaintiff alleges that on or about October 6, 2009, she sent a Qualified Written Request "QWR" to Defendant WF HOMES and then again on October 19, 2009 on USPS Certified Mail 7009 1410 0000 0070 1945, which was received by Defendant WF HOMES on October 26,

94.        2009 (EXHIBIT "F") and to date has not responded to the said request.   Under 12 U.S.C. 2605 (e)(1) Loan Servicers have 60 days after receipt of the QWR to respond to the borrower inquiry.   Defendant WF Homes and subsequently Defendnt WELLS have not responded to this request which in violation of the statute cited.

95.        Plaintiff alleges that Defendant KH orchestrated a transaction to collect Broker

Fees as well as Fees that have not been disclosed purporting to be a lender and having paid been

supposedly paid by Defendant WF HOMES on the Assignment recorded on September 25, 2003.

Plaintiff alleges that this was not fully disclosed of its effects with regard to her loan is a

kickback in violation of 12 U.S.C. §2607 which resulted in her paying for a higher rate than

she would have been extended had no kickback been given to Defendant KH by Defendant WF

HOME.

96.        As a direct and proximate result of the actions of Defendant KH in

combination resulting in fraud and breaches of duties, Plaintiff has suffered damages.

97.        Plaintiff thus demands an award of actual, compensatory and punitive

damages.

98.        Plaintiff therefore seeks a judicial declaration that the title to the Subject

Property is vested in Plaintiff alone and that defendants KH, Defendant WF HOME, and

subsequently Defendant WELLS and its successor trustee NATIONAL be declared to have no

estate, right, title, or interest in the Subject Property and that said defendants, and each of them,

be forever enjoined from asserting any estate, right, title, or interest in the Subject Property,

adverse to Plaintiff herein.


# TENTH CLAIM OF RELIEF

## Defendant WELLS is Committing the Tortious Act of Conversion

99.        Plaintiff realleges and incorporates by reference the allegations of all claims

of relief of this Complaint, *supra* and *ante*, as if fully set forth herein.

100.       Plaintiff alleges that Defendant WELLS is attempting to take the right, use of

property or interference to the control of such property without the Debtors consent and without

legal justification..

101.     Plaintiff alleges that by purporting to have  and beneficial interest, Defendant WELLS is perpetuating a tortuous act of Conversion by attempting to exercise the powers vested on the Deed of Trust that was void from the onset by Defendant KH's  Assignment to Defendant WF HOME even before the Deed of Trust was signed by the Plaintiff.

102.     As a direct and proximate result of the actions of Defendant KH in combination resulting in fraud and breaches of duties, Plaintiff will suffer damages if the Court allows the Defendants to proceed.

103.     Plaintiff thus demands an award of actual, compensatory and punitive damages.

104.     Plaintiff therefore seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone and that defendants KH and its successor trustee RECONTRUST and/or MERS be declared to have no estate, right, title, or interest in the Subject Property and that said defendants, and each of them, be forever enjoined from asserting any estate, right, title, or interest in the Subject Property, adverse to Plaintiff herein.


### ELEVENTH CLAIM OF RELIEF
### DECLARATORY AND INJUNCTIVE RELIEF
### [Against All Defendants]

105.     Plaintiff realleges and incorporates by reference the allegations of all causes of action of this Complaint, *supra* and *ante*, as if fully set forth herein.

106.     An actual controversy exists as to all legal and factual issues raised throughout this Complaint and incorporated by reference herein.

a.     none of these Defendants are parties to an express binding agreement with Plaintiff. Further, as set forth in the Complaint, any purported "binding" agreement between Plaintiff and Defendant KH is legally deficient, void and/or voidable ;

b.          the purported non-judicial foreclosure on the subject property was not conducted in accord with controlling statutes and was based upon improperly assigned, void and/or voidable documents;

c.          Defendants failed to provide Plaintiff with full disclosure of the material terms of her home loan, and fraudulently induced her to execute the loan contract;

d.          Defendants sold a loan to Plaintiff for which she was not qualified based upon her actual income, credit history, and debt and asset ratio;;

e.          Defendants filed their notice of default and commenced foreclosure against her without complying with the loan modification and foreclosure avoidance mandates of NRS §§ 170.080

107.        Plaintiff desires a judicial determination of her rights and duties, and a declaration from this Court as to the validity of the original mortgage loan agreements, the subsequent purported assignments of the deed of trust and/or mortgage note, and Defendants' non-judicial foreclosure on the subject property.

108.        A judicial declaration is necessary and appropriate at this time under the circumstances so that all parties may ascertain their legal rights to the subject property.

109.        Defendants' actions have undermined Plaintiff's rights to and enjoyment of the subject property and have interfered, and will continue to interfere with Plaintiff's right of possession as the owner of the subject property.

110.        As demonstrated by the facts and legal authority set forth throughout this Complaint and incorporated by reference herein, Plaintiff has a strong likelihood of prevailing on the merits.

111.         Plaintiff requests that this court grant a Preliminary Injunction and Temporary Restraining Order and issue injunctive relief to bar any further action to list the subject property for a non-judicial sale pursuant to foreclosure proceedings, to preclude Defendants from engaging in the wrongful conduct identified herein in the future.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff *Ederlinda Villa* prays for judgment as follows:

1.    That the foreclosure or attempted foreclosure of the Plaintiff property is deemed illegal and void and the same be permanently enjoined;

2.    For recission of the loan and cancellation of the deed of trust and note on the subject real property.

3.    That the September 16, 2003 loan transactions be deemed void as a result of Defendants' various breaches and violations;

4.    For an Order enjoining and/or restraining defendants from proceeding with any foreclosure, sale, transfer, unlawful detainer or any other action pertaining to the subject real property unless and until it can present proof that it is entitled enforce the underlying promissory note described in the deed of trust for the subject property;

5.    For general damages;

6.    For compensatory damages – in particular, due to the absence of any legally valid "binding express agreements" between Plaintiff and any Defendant, and all Defendants' failures

to make any restitution to him, Plaintiff can sustain an equitable theory such as unjust enrichment to recover the undeserved economic boon that inured to each Defendant from their receipt of her mortgage payments, associated fees and charges, etc. (See *Lauriedale Assocs. v. Wilson* (1992) 7 Cal.App.4th 1439, 1448.);

7.  For special damages according to proof;

8.  For exemplary and punitive damages according to proof;

9.  For costs of suit herein incurred;

10.  For an award to plaintiff for monetary damages against all Defendants jointly, severally, that Plaintiff incurred due to the need to bring this action for injunctive relief according to proof;

11.  For an award of statutory damages to plaintiffs for Unfair Debt Collection practices under Nevada statutes;

12.  For attorneys fees as permitted by law;

13.  For treble damages as permitted by law;

14.  For prejudgment interests as permitted by law; and

15.  For such other and further relief as the court may deem proper.


DATED: March 30, 2010

Ederlinda Villa
Attorney for Plaintiff, *in Pro Se*

# EXHIBIT "A"

Assessor's Parcel Number: 164-01-818-052

Recording Requested By:
KH FINANCIAL, L.P.


And When Recorded Return To:
KH FINANCIAL, L.P.
5999 NEW WILKIE ROAD, SUITE 203
ROLLING MEADOWS, ILLINOIS 60008
Loan Number: 131049


————————————— [Space Above This Line For Recording Data] —————————————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated SEPTEMBER 16, 2003    , together with all Riders to this document.
(B) "Borrower" is EDERLINDA A. VILLA AND BALDOMERO P. VILLA, HUSBAND AND WIFE AS JOINT TENANTS


Borrower is the trustor under this Security Instrument.
(C) "Lender" is KH FINANCIAL, L.P.

Lender is a  ILLINOIS CORPORATION                                            organized
and existing under the laws of  ILLINOIS
Lender's address is 5999 NEW WILKE ROAD, SUITE 203, ROLLING MEADOWS,
ILLINOIS 60008
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is NORTH AMERICAN TITLE CO.
4955 S. DURANGO, STE. 111, LAS VEGAS, NEVADA 89113

(E) "Note" means the promissory note signed by Borrower and dated SEPTEMBER 16, 2003    .
The Note states that Borrower owes Lender TWO HUNDRED TEN THOUSAND SIX HUNDRED
AND 00/100                              Dollars (U.S. $ 210,600.00          )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not
later than OCTOBER 1, 2033        .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☒ Planned Unit Development Rider  ☐ Other(s) [specify]
☐ 1-4 Family Rider  ☐ Biweekly Payment Rider

(I)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L)  "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY            of CLARK                    :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: 164-01-818-052

MAIL TAX STATEMENTS TO: KH FINANCIAL, L.P., 5999 NEW WILKIE
ROAD, SUITE 203, ROLLING MEADOWS, ILLINOIS 60008
which currently has the address of 10273 MAGNOLIA TRRE AVENUE

[Street]

LAS VEGAS                    , Nevada        89135                ("Property Address"):
         [City]                               [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029 1/01                    Page 3 of 14                    DocMagic *e*Forms* 800-649-1362
                                                                   www.docmagic.com

foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits

DocMagic ℰℱ*ℱℴℴℴℴℴℴ 800 649-1362
www.docmagic.com

Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.  Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.  Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.  **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.  **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until

termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the

sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted

limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c)

entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall

not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lenders' election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Assumption Fee.** If there is an assumption of this loan, Lender may charge an assumption fee of U.S. $25.00

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
EDERLINDA A. VILLA          -Borrower

_____ (Seal)
BALDOMERO P. VILLA          -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

Witness:                    Witness:

_____    _____

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029 1/01                Page 13 of 14

DocMagic eForms 800-649-1362
www.docmagic.com

———————————————————— [Space Below This Line For Acknowledgment] ————————————————————

State of Nevada
County of CLARK

    This instrument was acknowledged before me on                         by
    EDERLINDA A. VILLA, BALDOMERO P. VILLA

.

—————————————————————————————
Notary Public

        (Seal)                   My commission expires:

NEVADA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3029 1/01                        Page 14 of 14                    DocMagic eForms 800-649-1362
www.docmagic.com

Loan Number: 131049

Date: SEPTEMBER 16, 2003

Property Address: 10273 MAGNOLIA TRRE AVENUE, LAS VEGAS, NEVADA 89135

## EXHIBIT "A"

## LEGAL DESCRIPTION

Loan Number 131049

# FIXED/ADJUSTABLE RATE NOTE
### (One-Year Treasury Index - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE.    THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

SEPTEMBER 16, 2003                ROLLING MEADOWS                ILLINOIS
        [Date]                              [City]                         [State]

    10273 MAGNOLIA TRRE AVENUE, LAS VEGAS, NEVADA 89135
                        [Property Address]

## 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 210,600.00        (this amount is called "Principal"), plus interest, to the order of Lender. Lender is KH FINANCIAL, L.P., AN ILLINOIS CORPORATION
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    4.875   %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3.    PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the   1st   day of each month beginning on NOVEMBER  1  , 2003  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   OCTOBER 1, 2033   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 5999 NEW WILKE ROAD, SUITE 203, ROLLING MEADOWS, ILLINOIS 60008
                                    or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $  1,114.51      . This amount may change.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE--ONE-YEAR TREASURY INDEX
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3522 1/01                        Page 1 of 5

DocMagic CFRrom 800-649-1362
www.docmagic.com

## 4.    ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the       1st       day of        OCTOBER,  2008        , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."
### (B) The Index
Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding    TWO AND 750/1000                                      percentage points (      2.750   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
### (D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than       9.875     % or less than      2.750   %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than   TWO AND 000/1000
from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than       9.875      %.My interest rate will never be less than 2.750%.

### (E) Effective Date of Changes
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
### (F) Notice of Changes
The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.    BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of ___15___ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be ___5.000___ % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE--ONE-YEAR TREASURY INDEX
Single Family--Fannie Mae MODIFIED INSTRUMENT
Form 3522 1/01                              Page 3 of 5

DocMagic *eFarms* 800-649-1362
www.docmagic.com

# REQUEST FOR MORTGAGE AUDIT
## VENTURE PARTNERSHIP AGREEMENT

FAX # 702-951-0248
EMAIL : submissions@lawyer.com

**PROPERTY ADDRESS:  10273 MAGNOLIA TREE AVE.
LV NV 89135**

**OWNER: BALDOMERO VILLA & EDERLINDA VILLA**

# GRANT DEED

**LENDER: KH FINANCIAL, L.P.
WELLS FARGO BANK LOAN # 0132695651
FEDERAL NATIONAL MORTGAGE ASS.**

CLARK COUNTY, NEVADA
FRANCES DEANE, RECORDER

RECORDED AT THE REQUEST OF

NORTH AMERICAN TITLE COMPANY

09-25-2003    14:14    JBP

OFFICIAL RECORDS

BOOK/INSTR:20030925-04805

PAGE COUNT:    5

FEE:    16.00
RPTT:    586.25

**APN NO: 164-01-818-052**

RPTT $ **586.25**

Escrow No.: NV203-00592RLF

Recording requested by:
NORTH AMERICAN TITLE COMPANY

When recorded mail along with tax statement to:

**Ederlinda A. Villa and Baldomero P. Villa, 10530 Hope Mills Drive**
**Las Vegas, NV 89117**

# GRANT, BARGAIN, SALE DEED

THIS INDENTURE WITNESSETH: That

**KIMBALL HILL MAGNOLIA LIMITED PARTNERSHIP, A NEVADA LIMITED PARTNERSHIP**

In consideration of $10.00 and other valuable consideration, the receipt of which is hereby acknowledged, do hereby Grant, Bargain, Sell and Convey to:

**Ederlinda A. Villa and Baldomero P. Villa, Husband and Wife, As Joint Tenants**

All that real property situated in the County of Clark, State of Nevada, bounded and described as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

Subject to:    1.    Taxes for the current fiscal year, paid current

2.    Conditions, covenants, restrictions, reservations, rights,
rights of way and easements now of record, if any.

Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

DATE _____

Kimball Hill Magnolia Limited Partnership, a Nevada
limited partnership

BY: _____

R. Lee Venable, General Partner

State of Nevada
County of Clark

On _____ before me, the undersigned a Notary Public in
and for said County and State, personally appeared R. Lee Venable, General Partner, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the
instrument.
WITNESS my hand and official seal.

Signature _____

My Commission expires _____

NOTARY PUBLIC
STATE OF NEVADA
Count... Clark
ROBIN ...
Appt No ...
Expires ...

20030925
04805

**EXHIBIT "A"**

PARCEL ONE (1):

LOT 58 OF MAGNOLIA AT SUMMERLIN CENTRE UNIT 1, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 106 OF PLATS, PAGE 41, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

RESERVING THEREFROM A NON-EXCLUSIVE EASEMENT OF ACCESS, INGRESS, EGRESS, USE AND ENJOYMENT OF, IN, TO AND OVER THE PRIVATE STREETS AND ASSOCIATION PROPERTY AS DELINEATED ON THE PLAT MAP REFERRED TO ABOVE AND FURTHER DEFINED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS FOR MAGNOLIA AT SUMMERLIN RECORDED APRIL 4, 2003 IN BOOK 20030404 AS DOCUMENT NO. 00579 OF OFFICIAL RECORDS, AS THE SAME MAY FROM TIME TO TIME BE AMENDED AND/OR SUPPLEMENTED IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.

PARCEL TWO (2):

A NON-EXCLUSIVE EASEMENT OF ACCESS, INGRESS, EGRESS, USE AND ENJOYMENT OF, IN, TO AND OVER THE PRIVATE STREETS AND ASSOCIATION PROPERTY AS DELINEATED ON THE PLAT MAP AND FURTHER DEFINED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS FOR MAGNOLIA AT SUMMERLIN RECORDED APRIL 4, 2003 IN BOOK 20030404 AS DOCUMENT NO. 00579, AND AS THE SAME MAY FROM TIME TO TIME BE AMENDED AND/OR SUPPLEMENTED IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA, WHICH EASEMENT IS APPURTENANT TO PARCEL ONE (1).

# EXHIBIT "B"

# ESTIMATE

OMB NO. 2502-0265

| A. | B. TYPE OF LOAN |
|---|---|

**U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT**

**SETTLEMENT STATEMENT**

| B. TYPE OF LOAN |
|---|
| 1.☐FHA   2.☐FmHA   3.☐CONV. UNINS.   4.☐VA   5.☒CONV. INS. |
| 6. FILE NUMBER NV203-00592RLF  7. LOAN NUMBER 131049 |
| 8. MORTGAGE INS CASE NUMBER |

C.  NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

1.0   3/98   (NV203-00592RLF.PFD/NV203-00592RLF/18)

| D. NAME AND ADDRESS OF BORROWER | E. NAME AND ADDRESS OF SELLER | F. NAME AND ADDRESS OF LENDER |
|---|---|---|
| Ederlinda A. Villa and Baldomero P. Villa 10530 Hope Mills Drive Las Vegas, NV 89135 | Kimball Hill Magnolia 8 Sunset Way #101 Henderson, NV 89014 | KH Financial 6 Sunset Way #102 Henderson, NV 89014 |

| G. PROPERTY LOCATION 10273 Magnolia Tree Avenue Las Vegas, NV 89138 Clark County, Nevada | H. SETTLEMENT AGENT  54-2085989 North American Title Company | I. SETTLEMENT DATE September 19, 2003 |
|---|---|---|
| | PLACE OF SETTLEMENT 4955 S. Durango Drive Suite 111 Las Vegas, Nevada 89113 | |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 234,035.00 | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 4,714.98 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. Special Assessment          to | | 406. Special Assessment          to | |
| 107. County Taxes      09/19/03 to 07/01/04 | 90.27 | 407. County Taxes          to | |
| 108. Assessments            to | | 408. Assessments          to | |
| 109. sub HOA Dues 09/19/03 to 10/01/03 | 11.20 | 409. | |
| 110. master HOA Dues 09/19/03 to 10/01/03 | 12.40 | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| *120. GROSS AMOUNT DUE FROM BORROWER* | 238,863.85 | *420. GROSS AMOUNT DUE TO SELLER* | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 2,500.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 210,600.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. Special Assessment  04/01/03 to 09/19/03 | 148.17 | 510. Special Assessment          to | |
| 211. County Taxes          to | | 511. County Taxes          to | |
| 212. Assessments      06/01/03 to 09/19/03 | 84.41 | 512. Assessments          to | |
| 213. Options Money Paid | 1,512.00 | 513. | |
| 214. Flooring Money Paid | 740.00 | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218 | | 518 | |

| 9. | | 519. | |
|---|---|---|---|
| 20. TOTAL PAID BY/FOR BORROWER | 215,584.58 | 520. TOTAL REDUCT. AMT DUE SELLER | |
| 00. CASH AT SETTLEMENT FROM/TO BORROWER: | | 600. CASH AT SETTLEMENT TO/FROM SELLER: | |
| 01. Gross Amount Due From Borrower (Line 120) | 238,863.85 | 601. Gross Amount Due To Seller (Line 420) | |
| 02. Less Amount Paid By/For Borrower (Line 220) | ( 215,584.58) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| 03. CASH ( X FROM ) ( TO ) BORROWER | 23,279.27 | 603. CASH ( X TO ) ( FROM ) SELLER | |

The undersigned hereby acknowledge receipt of a completed copy of pages 1&2 of this statement & any attachments referred to herein.

Borrower

Ederlinda A. Villa

Baldomero P. Villa

ESTIMATE

HUD-1 (3-86) RESPA, HB4305 2

Page 2

## L. SETTLEMENT CHARGES

| 700. TOTAL COMMISSION Based on Price | $ | @ | % | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|---|
| Division of Commission (line 700) as Follows | | | | | | |
| 701 $ | to | | | | | |
| 702 $ | to | | | | | |
| 703 Commission Paid at Settlement | | | | | | |
| 704 | | to | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | | | |
| 801 Loan Origination Fee       0.5000 % | to KH Financial | | | | 1,053.00 | |
| 802 Loan Discount                        % | to | | | | | |
| 803 | to | | | | | |
| 804 | to | | | | | |
| 805 | to | | | | | |
| 806 | to | | | | | |
| 807 | to | | | | | |
| 808 | | | | | | |
| 809 Flood Cert | to KH Financial | | | | 18.00 | |
| 810 | | | | | | |
| 811 Tax Service Fee | to KH Financial | | | | 78.00 | |
| 812 Document Fee | to KH Financial | | | | 35.00 | |
| 813 | | | | | | |
| 814 Processing Fee | to KH Financial | | | | 200.00 | |
| 815 Administration Fee | to KH Financial | | | | 350.00 | |
| 816 | | | | | | |
| 817 | | | | | | |
| 818 | | | | | | |
| 819 | | | | | | |
| 820 | | | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | | | |
| 901 Interest From 09/19/03 to 10/01/03 @ $ 28.128100/day ( 12 days  4.6250%) | | | | | 337.54 | |
| 902 Mortgage Insurance Premium for      months to | | | | | | |
| 903 Hazard Insurance Premium for     1.0 years to Allstate | | | Pol# 000191324177810 | | 438.00 | |
| 904 | | | | | | |
| 905 | | | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | | | |
| 1001 Hazard Insurance | 2.000 months @ $ | 36.50 per month | | | 73.00 | |
| 1002 Mortgage Insurance | @ $ | per | | | | |
| 1003 Special Assessment | @ $ | per | | | | |
| 1004 County Taxes | 2.000 months @ $ | 196.67 per month | | | 393.34 | |
| 1005 Assessments | @ $ | per | | | | |
| 1006 | @ $ | per | | | | |
| 1007 | @ $ | per | | | | |
| 1008 Aggregate Adjustment | months @ $ | per month | | | -0.04 | |
| **1100. TITLE CHARGES** | | | | | | |
| 1101 Settlement/Closing/Escrow Fee | to North American Title Company | | | | 153.75 | |
| 1102 Abstract or Title Search | to | | | | | |
| 1103 Title Examination | to | | | | | |
| 1104 Title Insurance Binder | to | | | | | |
| 1105 Document Preparation | to | | | | | |
| 1106 Notary Fees/Misc. Charges | to | | | | | |
| 1107 Attorney's Fees | to | | | | | |
|         (includes above item numbers | | | | ) | | |
| 1108 Title Insurance | to North American Title Insurance Company | | | | 427.95 | |
|         (includes above item numbers | | | | ) | | |
| 1109 Lender's Coverage | $ 210,600.00 | | 427.95 | | | |
| 1110 Owner's Coverage | $ 234,035.00 | | 459.60 | | | |
| 1111 | | | | | | |
| 1112 | | | | | | |
| 1113 Courier Fee | to North American Title Company | | | | 25.00 | |
| 1114 | | | | | | |
| 1115 Telecommunicated Documents | to North American Title Company | | | | 25.00 | |
| 1116 | | | | | | |
| 1117 Additional 10% Premium | to North American Title Company | | | | 45.96 | |
| 1118 | | | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | | | |
| 1201 Recording Fees  Deed $ 16.00 Mortgage $ 34.00 | | Releases $ | | | 50.00 | |
| 1202 City/County Tax/Stamps  RPTT | $ | Mortgage | $ | | | |
| 1203 State Tax/Stamps      Deed | $ | Mortgage | $ | | | |
| 1204 Record Notice of Completion | to North American Title Company | | | | 16.00 | |
| 1205 Record Corporate Assignment | to North American Title Company | | | | 16.00 | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | | | |
| 1301 Survey | to | | | | | |
| 1302 Pest Inspection | to | | | | | |
| 1303 | | | | | | |

| | | | |
|---|---|---|---|
| 304  PAD | to  Refundable @ coe | 100.00 | |
| 305  See addit'l disb. exhibit | to | 879.48 | |
| **400. TOTAL SETTLEMENT CHARGES  (Enter on Lines 103, Section J and 502, Section K)** | | 4,714.98 | |

By signing page 1 of this statement, the signatories acknowledge receipt of a completed copy of page 2 of the two page statement.

North American Title Company
Settlement Agent

( NV203-00592RLF / NV203-00592RLF / 18 )

## BORROWER ADDITIONAL DISBURSEMENTS EXHIBIT

**Borrower:** Ederlinda A. Villa and Baldomero P. Villa
**Seller:** Kimball Hill Magnolia Limited Partnership, a Nevada limited partnership
**Lender:** KH Financial
**Settlement Agent:** North American Title Company
(702)257-6282
**Place of Settlement:** 4955 S. Durango Drive Suite 111
Las Vegas, Nevada 89113
**Settlement Date:** September 19, 2003
**Property Location:** 10273 Magnolia Tree Avenue
Las Vegas, NV 89138
Clark County, Nevada

| PAYEE/DESCRIPTION | NOTE/REF NO | BORROWER |
|---|---|---|
| Magnolia sub homeowners association<br>Sub HOA dues | | 28.00 |
| Magnolia sub homeowners association<br>sub HOA capital contribution | | 56.00 |
| Terra West Property Mgmt.<br>Terra West Property Mgmt. | | 90.00 |
| Summerlin South Community Association<br>Master HOA dues | | 31.00 |
| Summerlin South Community Association<br>Master capital contribution | | 186.00 |
| Clark County Treasurer<br>2nd Qtr Taxes 2003-04 | APN 164-01-818-052 | 488.48 |
| **Total Additional Disbursements shown on Line 1305** | | $ 879.48 |

EXHIBIT "C"

ASSESSORS PARCEL #: 164-01-818-052

WHEN RECORDED, MAIL TO:
KH FINANCIAL, L.P.
5999 NEW WILKIE ROAD, SUITE 203
ROLLING MEADOWS, ILLINOIS 60008
INSTRUMENT PREPARED BY:
MAIL TAX STATEMENTS TO:
WELLS FARGO HOME MORTGAGE, INC., P.O. BOX 10304, DES MOINES, IA 50306-0304
Order No. NV203-00592RLF
Escrow No. NV203-00592RLF
Loan No. 131049

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## Corporation Assignment of Deed of Trust

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to
WELLS FARGO HOME MORTGAGE, INC., A CALIFORNIA CORPORATION, 3601 MINNESOTA DRIVE, MAC X4701-022, BLOOMINGTON, MN 55435

all beneficial interest under that certain Deed of Trust dated    SEPTEMBER 16, 2003
executed by EDERLINDA A. VILLA AND BALDOMERO P. VILLA, HUSBAND AND WIFE AS JOINT TENANTS

, Trustor,

to NORTH AMERICAN TITLE CO.                                  , Trustee,
and recorded as Instrument No.          on          in book       , page
, of Official Records in the County Recorder's office of    CLARK           County,
NEVADA                    , describing land therein as:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

CORPORATION ASSIGNMENT OF DEED OF TRUST        Page 1 of 2        DocMagic *800-649-1362* www.docmagic.com

STATE OF NEVADA        SS.
COUNTY OF CLARK

On 1/16/03        before me,

personally appeared    Julie J. Mock

personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the
person(s), acted, executed the instrument.

WITNESS my hand and official seal.

Signature _Estelle Marie Shank_

ESTELLE MARIE SHANK
Notary Public State of Nevada
No. 01-70406-1
My appt. exp. July 2, 2005

(This area for official notarial seal)

KH FINANCIAL, L.P., AN
ILLINOIS CORPORATION



Julie J. Mock
Operations Manager

---

NEVADA CORPORATION ASSIGNMENT OF DEED OF TRUST
Page 2 of 2

DocMagic eForms 800-649-1362
www.docmagic.com

# EXHIBIT "D"



SERVICES   PROGRAMS   PRESS   PUBLICATIONS   DEPARTMENTS   CONTACT

## LP/LLLP/LLP/RLLP - CERTIFICATE OF EXISTENCE

**Your search for KH Financial, did not match any records in the LP/LLLP/LLP/RLLP Search database.**

**Please try again.**

Return to Search

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

# EXHIBIT "E"

WILDE & ASSOCIATES                                    Electronically Filed on _____
Gregory L. Wilde, Esq.
Nevada Bar No. 004417
208 South Jones Boulevard
Las Vegas, Nevada 89107
Telephone:  702 258-8200
bk@wildelaw.com
Fax:  702 258-8787
and
MARK S. BOSCO, ESQ.
Arizona Bar No. 010167
TIFFANY & BOSCO, P.A.
2525 East Camelback Road, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 255-6000

Wells Fargo Bank, N.A.
09-75115

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In Re: | BK-S-09-19361-mkn |
| Badomero P. Villa and Ederlinda A. Villa | Date:  9/2/09<br>Time: 1:30pm |
| | Chapter 7 |
| Debtors. | |

## <u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>

Wells Fargo Bank, N.A., Secured Creditor herein, ("Secured Creditor" or "Movant"

hereinafter), alleges as follows:

1.    That on or about June 2, 2009, the above named Debtors filed their current Chapter 7

Petition in Bankruptcy with the Court.

2.    Secured Creditor is the current payee of a promissory note dated September 16, 2003 in

the principal sum of $210,600.00 ("Promissory Note" herein), secured by a Real Property Trust Deed

164-01-818-052

of same date ("Trust Deed" herein) upon property generally described as 10273 Magnolia Tree, Las

Vegas, NV 89135, and legally described as follows:

> PARCEL ONE (1):
> LOT 58 OF MAGNOLIA AT SUMMERLIN CENTRE UNIT 1, AS SHOWN BY MAP
> THEREOF ON FILE IN BOOK 106 OF PLATS, PAGE 41, IN THE OFFICE OF THE
> COUNTY RECORDER OF CLARK COUNTY, NEVADA.
>
> RESERVING THEREFROM A NON-EXCLUSIVE EASEMENT OF ACCESS, INGRESS,
> EGRESS, USE AND ENJOYMENT OF, IN, TO AND OVER THE PRIVATE STREETS AND
> ASSOCIATION PROPERTY AS DELINEATED ON THE PLAT MAP REFERRED TO
> ABOVE AND FURTHER DEFINED IN THE DECLARATION OF COVENANTS,
> CONDITIONS AND RESTRICTIONS AND RESERVATION OF EASEMENTS FOR
> MAGNOLIA AT SUMMERLIN RECORDED APRIL 4, 2003 IN BOOK 20030404 AS
> DOCUMENT NO. 00579 OF OFFICIAL RECORDS, AS THE SAME MAY FROM TIME TO
> TIME BE AMENDED ANDIOR SUPPLEMENTED IN THE OFFICE OF THE COUNTY
> RECORDER OF CLARK COUNTY, NEVADA.
>
> PARCEL TWO (2):
> A NON-EXCLUSIVE EASEMENT OF ACCESS, INGRESS, EGRESS, USE AND
> ENJOYMENT OF, IN, TO AND OVER THE PRIVATE STREETS AND ASSOCIATION
> PROPERTY AS DELINEATED ON THE PLAT MAP AND FURTHER DEFINED IN THE
> DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS AND
> RESERVATION OF EASEMENTS FOR MAGNOLIA AT SUMMERLIN RECORDED
> APRIL 4, 2003 IN BOOK 20030404 AS DOCUMENT NO. 00579, AND AS THE SAME
> MAY FROM TIME TO TIME BE AMENDED AND/OR SUPPLEMENTED IN THE OFFICE
> OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA, WHICH EASEMENT IS
> APPURTENANT TO PARCEL ONE (1).

("subject property" herein).

    3.      Secured Creditor is informed and believes, and, based upon such information and belief,

alleges that title to the subject property is currently vested in the name of Debtor.

    4.      With respect to secured Creditor's trust deed the following is due and owing:

| | |
|---|---|
| Unpaid Principal Balance | $195,958.89 |
| 7 Monthly Payments at $1,502.76 (February 1, 2009-August 1, 2009) | $10,519.32 |
| Accrued Late Charges | $ 1,009.44 |
| Corporate Advance | $ 2,858.66 |
| Foreclosure Fees and Costs | $ 2,005.66 |
| Motion Filing Fee | $ 150.00 |
| Attorneys Fees | $ 750.00 |
| Total Arrearages | $17,293.08 |

1  Furthermore, a payment becomes due on September 1, 2009 and on the first (1st) day of every month

2  thereafter, and a late charge becomes due on any payment not paid within fifteen (15) days from the

3  date the monthly payment is due.

4          5.      Movant is informed and believes and therefore alleges that the Debtor and bankruptcy

5  estate have insufficient equity in the property.    The fair market value of the property pursuant to

6  www.Zillow.com is $224,500.00, less ten percent (10%) cost of marketing, less the first secured liens

7  resulting in insufficient equity.  Therefore, the secured creditor is not adequately protected.  A true and

8  correct copy of the www.Zillow.com is attached hereto as Exhibit "A".

9          6.      Secured Creditor has elected to initiate foreclosure proceedings on the Property with

10  respect to the subject Trust Deed; however Secured Creditor is precluded from proceeding to publish

11  the necessary notices and commence said foreclosure action during the pendency of this Bankruptcy.

12          7.      Secured Creditor has incurred to date attorney's fees of approximately $750.00.

13          8.      Secured Creditor urges that this Court issue and Order herein permitting this Secured

14  Creditor to proceed to a Foreclosure Sale of the Property, including necessary action to obtain

15  possession of the Property.

16          9.      Secured Creditor's Information Sheet as to the extent of liens and encumbrances against

17  the subject property is attached hereto as Exhibit "B" and incorporated herein by reference. Secured

18  Creditor will seek leave of Court to specify any further encumbrances against the subject property at

19  the time of hearing.

20          10.     Yvette Weinstein has been appointed by this Court the Chapter 7 Trustee in this instant

21  Bankruptcy proceeding.  By virtue of the position as Trustee of the estate of Debtor herein, Debtor

22  holds title to the subject property in that capacity.  To the extent the relief sought herein is granted,

23  Respondent, Yvette Weinstein, Trustee, is bound any such judgment.

24          11.     This Court has jurisdiction of this action pursuant to the provisions of 11 U.S.C. Section

25  362(d).

26          WHEREFORE, Secured Creditor prays judgment as follows:

(1)    For an order granting relief from the Automatic Stay, and permitting this Secured Creditor to move ahead with foreclosure proceedings under this Secured Creditor's Trust Deed and to sell the subject property at a Foreclosure Sale under the items of said Trust Deed, including necessary action to obtain possession of the Property.

(2)    That a finding that Rule 4001(a)(3) of the Rules of Federal Bankruptcy Procedure is not applicable and Secured Creditor may immediately enforce and implement the order granting relief from the automatic stay.

(3)    In the alternative, an Order requiring the Debtor to reinstate and maintain all obligations due under all of the trust deeds encumbering the subject property and further allowing Secured Creditor with the remedies to proceed with foreclosure should the Debtor not maintain payments.

(4)    For attorneys' fees and costs of suit incurred herein.

(5)    For such other and further relief as this Court deems appropriate.

DATED _____8/10/09_____.

WILDE & ASSOCIATES

By _____
GREGORY L. WILDE, ESQ.
Attorney for Secured Creditor
208 South Jones Boulevard
Las Vegas, Nevada 89107

**Zillow.com®**

**10273 Magnolia Tree Ave**
**Las Vegas NV 89135**
4 beds, 2.5 baths, 2,032 sq ft
**Recently Sold: $208,276**
**My Estimate:**

**Monthly Payment: $ 926 edit**
Current Rates

**Bird's Eye View**



See a

**Home Info**
**Owner Facts:**
- Single family
- 4 beds
- 2.5 bath
- 2,032 sqft

**Neighborhood: 89135**

**Nearby Schools:**

**District:**
  Clark
**Primary:**
  D'Vorre & Hal Ober ...
**Middle:**
  Sig Rogich Middle ...
**High:**
  Palo Verde High Scho ...

See more 89135 local information

**Charts & Data**



**ZESTIMATE®: $224,500**
Value Range: $150,415 –
$249,195
Zestimate updated: 08/07/2009

**Last sale and tax info**

**Sold 09/23/2008:**
  $208,276 *
**2009 Property Tax:**
  $3,060

* Transaction not included in
Zestimate. More Info
: 40 – Car-Dependent

EXHIBIT _A_

10273 Magnolia Tree Ave, Las Vegas, NV 89135 - Zillow

**Street Map**

**10273 Magnolia Tree Avenue, Las Vegas, NV**
  Bird's eye view and larger map for 10273 Magnolia Tree Ave
  Edit map location for 10273 Magnolia Tree Ave

Some information on page provided by Homes.com
**Alternate Addresses**
10273, magnolia tree, magnolia tree, magnoliatree, ave, av, aven,
avenu, avenue, avnue, 89135, las vegas, las vega s, las vega so, las
vega south, las vegaso, las vegasouth, lasvega s, lasvega so, lasvega

** SECTION 362 INFORMATION SHEET **

Badomero Villa and Ederlinda Villa
DEBTOR(S)

Chapter 7
Case No.: 09-19361-mkn

Wells Fargo Bank, N.A.
MOVANT
PROPERTY INVOLVED IN THIS MOTION: 10273 Magnolia Tree, Las Vegas NV 89135

NOTICE SERVED ON: Debtor(s) _____ x _____ : Debtor (s) Counsel _____ x _____ : Trustee _____ x _____

DATE OF SERVICE: _____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st Wells Fargo Bank, N.A. (PB$195,958.89) | 1st _____ |
| Total Encumbrances: $195,958.89 | 2nd _____ |
| APPRAISAL or OPINION as to VALUE: | Total Encumbrances: $ _____ |
| "Per attached www.Zillow.com " $224,500.00 | APPRAISAL or OPINION as to VALUE: |

| TERMS OF MOVANT'S CONTRACT WITH THE DEBTOR | OFFER OF "ADEQUATE PROTECTION" FOR MOVANT: |
|---|---|
| Amount of Note: $210,600.00 | |
| Interest Rate: 7.875 | |
| Duration: 30 Year | |
| Payment Per Month: $ 1,502.76 | |
| Date of Default: February 1, 2008 | |
| Amount of Arrearages: $17,293.08 | |
| Date of Notice of Default: April 23, 2008 | |
| SPECIAL CIRCUMSTANCES: I, Gregory L. Wilde, hereby certify that an attempt has been made to confer with debtor(s) counsel, or with debtor(s) and that more than two (2) business days have expired, and that after sincere effort to do so, counsel has been unable to resolve this matter without court action. | SPECIAL CIRCUMSTANCES: |
| | SUBMITTED BY: _____ |
| SUBMITTED BY: _____ | SIGNATURE: _____ |
| SIGNATURE: | |

EXHIBIT 

# EXHIBIT "F"


**UNITED STATES POSTAL SERVICE**

**Track & Confirm**          **FAQs**

# Track & Confirm

## Search Results

Label/Receipt Number: **7009 1410 0000 0070 1945**
Status: **Delivered**

Your item was delivered at 9:43 am on October 26, 2009 in FORT MILL,
SC 29715. A proof of delivery record may be available through your local
Post Office for a fee.

Additional information for this item is stored in files offline.

*Restore Offline Details >*   **( ? )**   *Return to USPS.com Home >*

Track & Confirm

Enter Label/Receipt Number.

*Go >*

Site Map   Customer Service   Forms   Gov't Services   Careers   Privacy Policy   Terms of Use   Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.   No FEAR Act EEO Data   FOIA